This is an appeal from a judgment of the county court of St. Clair County entered in an action in which the county treasurer,ex officio county collector, applied for judgment and order of sale of real estate for delinquent taxes of 1944. Appellant filed written objections to various items of taxes, but the only one involved on this appeal is with reference to the levy for educational purposes by school district No. 189, St. Clair County. The objection is that there is an excessive levy of 1.118 per cent included in the 2.118 per cent rate extended for educational purposes. The legal rate which the board could levy without authorization for an increase by election was one per cent. Appellant contends that the remainder, or 1.118 per cent, represents the total percentage of increase purportedly authorized at three different elections held in 1915, in 1922 and 1929, respectively. One of appellant's objections is that the proposition as printed on the ballots as a part of said elections was stated in language so indefinite and uncertain that a voter could not determine the percentage of increase for which he was voting. Another *Page 509 
objection is that at the 1922 election the proposition printed on the ballot for an increase combined the proposal to increase both the educational rate and the building rate in one question, thereby depriving the voter of the opportunity to make a selection. It is also urged that the ballots at the 1922 and 1929 elections were in bad form in that they called for a vote of "for" or "against" instead of a "yes" or "no" vote, as was required by section 16 of the Ballot Act.
Objections similar to the ones filed here and questioning the sufficiency of the ballots used in elections where an increase of tax rate for school purposes had been authorized were considered in People ex rel. Pickerill v. New York Central Railroad Co.391 Ill. 377; People ex rel. Manifold v. Chicago, Burlington andQuincy Railroad Co. 386 Ill. 56; People ex rel. Manifold v.Wabash Railway Co. 386 Ill. 149, and People ex rel. Hempen v.Baltimore and Ohio Railroad Co. 379 Ill. 543. In each of these cases it was held that the evidence did not establish the objection, in that it could not be determined that the ballot actually used was subject to the objections made. The substance of the holdings in the several cases referred to was that the burden was upon the objectors to prove that the irregularities complained of actually appeared on the ballots used at the election, and the proof being insufficient to establish such fact the objections were overruled. Appellant in this case contends that it has overcome the deficiency of proof found in the cases above cited and that the defects pleaded in its objections are shown by the evidence to have been present on the ballots that were actually used at the elections.
Upon the trial it was stipulated that appellee made a primafacie case for judgment for the taxes to which objection was made. Appellant introduced in evidence in support of its objection the resolution of the board of education calling the election of April 17, 1915; the resolution *Page 510 
of the board of education calling the election of April 8, 1922, and the resolution calling the election of April 13, 1929. Also, appellant introduced in evidence a canvass of the returns of the election held April 17, 1915, the same for the returns of the election held April 8, 1922, and of the election held April 13, 1929, showing in each case the proposition to levy additional tax was carried. Also, appellant introduced a purported transcript of the record of a bond issue of the district in 1915. This transcript was not identified by anyone. It contained a paper headed "School Election Ballot," but this was not marked as a specimen ballot or a sample ballot. Louis Beasley, a former election clerk, when his attention was called to this ballot, testified that he had no independent recollection, outside of seeing the ballot, as to just what it purports to be but that he would say it was a ballot, or rather a sample ballot, used in the election on April 17, 1915.
William L. Heckert and Henry Albrecht, witnesses for appellant, testified that appellant's exhibit No. 11, taken from a transcript found among the files of the Mississippi Valley Trust Company of St. Louis, Missouri, was an official ballot of the type prepared for use at the election in April, 1922. They each testified, however, that they had no independent recollection of the ballots voted at the April, 1922, election, but only from refreshing their memory by looking at this exhibit could they testify.
Adrienne Pe Leate testified that she was employed at the board of election commissioners' office in East St. Louis and made a search for official ballots in that office for school district No. 189 for the school elections held in 1915, 1922 and 1929; that she found nothing in connection with the elections of 1915 and 1922. In connection with the 1929 election she found a bunch of papers which she identified as a scrapbook of newspaper notices of election and specimen ballots and other papers which have to do with the election of 1929. On page 125 of the scrapbook she *Page 511 
found what she testified was a specimen ballot used at the school board election on April 13, 1929. She had no personal knowledge as to this ballot or whether it was a specimen ballot that was used at that election. She said, "All I know is what I found in this book by looking at it and I know from looking at it, it is marked `Specimen Ballot.'"
John C. Reimann, witness for appellant, testified he was formerly employed in the office of board of election commissioners in East St. Louis and that he started the scrapbook to which reference was made. He further testified that he had no personal recollection and that he could not have a recollection of 17 years ago. Referring to the ballots used in the 1929 election he testified that he wouldn't be able to say that they had been destroyed and that "It is possible those ballots are still in the vault upstairs, at that time some things were kept in a room upstairs I wouldn't know." The record does not show that the vault referred to was ever searched.
Section 127 of the School Code (Ill. Rev. Stat. 1943, chap. 122, par. 136,) provides that the board of education has all the duties and power of boards of directors and is subject to the same limitations. Section 112 provides that the clerk of the board of directors shall keep in a punctual, orderly and reliable manner a record of the official acts of the board. (Ill. Rev. Stat. 1943, chap. 122, par. 120.) These sections of the school code are substantially the same in the above respect as sections 127 and 112, respectively, of the 1909 School Law, which was continued in the school law and was in full force and effect in 1915, 1922 and 1929.
The above section requiring the clerk to keep a record of the "official acts of the board" requires that a record be kept of the essential steps in levying a tax. (People ex rel. Toman v.Chicago Heights Terminal Transfer Railroad Co. 375 Ill. 590, at p. 597.) Every essential proceeding in the course of a levy of taxes must appear in some *Page 512 
written and permanent form in the records of the body authorized to act upon them. (People ex rel. Stuckart v. Chicago, Lake Shoreand Eastern Railway Co. 270 Ill. 477, at p. 483.) It cannot be disputed that a legal ballot is one of the essential steps in levying the tax which is objected to in this case. And, where public officials are required to keep a record of their proceedings, such record constitutes the only lawful evidence of action taken, and cannot be contradicted, added to or supplemented by parol. Gietl v. Comrs. of Drainage Dist. No. 1,384 Ill. 499, at p. 502.
This court has often held that the officers charged with the keeping of the record of the action of taxing bodies may be permitted in the presence of the court to amend the record in accordance with the facts shown by the evidence (People ex rel.Coffman v. Illinois Central Railroad Co. 314 Ill. 339, at p. 343,) yet it does not appear from the record herein that the court permitted any amendment of the school board record or that any such amendment was asked. The proof concerning the ballot used at the election was by evidence other than the record, i.e., by parol. In People ex rel. Yohe v. Hubble, 378 Ill. 377, it was held that the contents of lost or destroyed records may be proved by parol and that the rule that the record is the only lawful evidence applies only when the parol evidence is offered to supply, amend, contradict or supplement the record, and does not apply when the record did exist but has been lost. However, in the instant case a part of the record was introduced in evidence in regard to the elections and it was sought by the introduction of the parol evidence to supplement the records by showing the form of the ballot used.
The record also shows that the transcript of the 1915 bond issue was not identified by anyone. The only showing as to the ballot was the copy found in this transcript and the evidence of one witness who testified that in his opinion it was the ballot used, although he had no independent *Page 513 
recollection about it. The transcript found among the files of the Mississippi Valley Trust Company of St. Louis contained a copy of a ballot. Two witnesses for appellant testified that this was an official ballot of the type prepared for use at the election in April, 1922, but that they had no independent recollection of the ballots voted at that election. As to the 1929 election, what appeared to be a specimen ballot was found in the scrapbook. One witness testified that he put it in the scrapbook at page 125, that it was a specimen ballot, but that he could not particularly have a recollection of 17 years ago or remember about this page. He further testified that he recommended they prepare two ballots and that the petition may have been amended or changed. Objection was made to the introduction of all of appellant's secondary evidence with reference to the ballots. The evidence was admitted subject to the objection and no ruling of the court was made as finally admitting or rejecting it. Assuming, however, that it was properly admitted, it falls far short of establishing that the ballots introduced were identical with those actually used at any of the three elections questioned. A record cannot be amended or supplied by the uncertain memory of witnesses, even of clerks or officers. People v. Commonwealth Edison Co. 367 Ill. 260; Peopleex rel. Pfeiffer v. Morris, 365 Ill. 470; People v. Chicago, LakeShore and Eastern Railway Co. 270 Ill. 477.
It was the duty of the board of education to determine the amount necessary for educational purposes for the year 1944 and to certify such amount to the township treasurer; and it was the duty of the township treasurer to return such certificate to the county clerk on or before the first Tuesday in October, 1943. It was the duty of the county clerk to ascertain from such certificate and the equalized valuation of the taxable property in the district the rate necessary to raise the tax. (Ill. Rev. Stat. 1943, chap. 122, par. 213, sec. 190.) There is no evidence in *Page 514 
the record as to any certificate on file with the county clerk, and, in the absence of any showing whatever, it must be presumed that the county clerk had in his office a proper certificate from the board of education from which he arrived at the rate of 1.118 per cent over and above the statutory rate. Such certificate could have been based upon an election other than the ones questioned by appellant. It cannot be determined from any evidence in the record by what mathematical calculation the county clerk arrived at the rate of 2.118 per cent. In this respect, the evidence does not sustain the objection that the rate was excessive by 1.118 per cent.
This court said in People v. Chicago, Burlington and QuincyRailroad Co. 386 Ill. 56, at p. 63: "The requirement that a certificate be filed with the county clerk is to enable him to extend the taxes at the proper rate. When he has a certificate that the rate has been increased over the minimum fixed by the statute he has a right to extend the rate, and to assume the officials have complied with the law. The burden of establishing the invalidity of a tax rests upon the objector, and in the absence of proof to the contrary it is presumed just and that the officers levying it have properly discharged their duties."
In People v. New York Central Railroad Co. 391 Ill. 377, a "Specimen Ballot" was certified by the secretary of the board of education to be used at a special election and the county clerk testified that he would not be positive that the ballot shown was the ballot used at the election, and we held that where there was no further testimony concerning it, and where more than twenty years had passed by apparently without the question being raised, there was no positive verification of the form of ballot used at the election and that the objector had not sustained the burden of proof imposed upon him.
In People v. Wabash Railway Co. 386 Ill. 149, it was conceded, as it is in the case at bar, that the collector made *Page 515 
a prima face case and that the rule that anyone objecting to a tax assumes the burden of showing its invalidity. The presumption always is that the tax is just and that officers levying it have properly discharged their duties. In People v. Baltimore and OhioRailroad Co. 379 Ill. 543, where the question was raised as to the validity of the ballot at an election held twenty years before, we said: "The certificate does not state what the form of the ballot was in that election; it merely states the result of the election. Twenty years have gone by, apparently without the question being raised, until someone referred to the old file and found the certificate of election, which may have had a ballot in proper form, or may have had a ballot embodying both items contained in the certificate. This is not sufficient at this late date to show what the form of the ballot was, * * *." We further said in that case "It is sufficient for the purposes of this case to hold there is nothing in the record which shows there was not a ballot in proper form submitted to the voters, which makes it unnecessary for us to pass upon the proper form of the ballot," etc.
Appellant has filed its objections under the provisions of section 194 of the Revenue Act of 1939, as amended, originally enacted in 1933. It provided for a refund of taxes paid under protest where objection to the tax is sustained. No prior act contained such provision. The effect of sustaining the contention of appellant would be that the act of 1933 permitted the contest of every election authorizing a special tax for school purposes, on the form of the ballot, when prior thereto no refund could have been had were appellant successful on its objection. It would seem the statute authorizing the payment of taxes under protest and the filing of objections contemplated objections to matters occurring after its enactment. The statute was not intended to relate back to question the validity of an election by which the special tax was authorized long prior to its enactment. *Page 516 
In the instant case, appellant has been paying taxes for a period of thirty years under the election of 1915 and for as much as fifteen years under the last of the elections questioned. The sole question raised is whether the ballot was in proper form to comply with the statute. No objection is made to the right to levy a tax for the schools by such elections, but the objection is made because it is said the officials did not observe the proper formalities in submitting the question to the voters.
The law of 1933 was enacted to promote fairness and justice in the administration of tax collections. State and municipal subdivisions may be estopped from taking positions which will result in injustice. (Melin v. Community Consolidated SchoolDist. 312 Ill. 376; Clokey v. Wabash Railway Co. 353 Ill. 349;Trustees of Schools v. Village of Cahokia, 357 Ill. 538.) While the Statute of Limitations does not strictly apply to the present situation, yet when the situation savors of laches, and the public will well be prejudiced by the long delay of appellant should the tax now be held invalid, the same rule, in fairness, should apply to appellant.
There is authority for holding that the doctrine of estoppel may be applied in a county court where objection to taxes is made on application for judgment against real estate. In the early case of Thatcher v. People ex rel. Johnson, 98 Ill. 632, we held that the objector by reason of his prior action was estopped from questioning the validity of the proceeding to levy the tax even though fatal defects existed therein. After holding that there was a fatal defect in the proceeding, we there said: "Nevertheless, under the circumstances of this case, we do not think appellant is in a position to question the regularity or validity of the election in question, or the subsequent proceedings of the directors had upon the faith of it, in borrowing the money and issuing the bonds, for the payment of which the tax in controversy was levied." The doctrine *Page 517 
of estoppel was also applied in the case of People ex rel. James
v. Seaman, 239 Ill. 611. This was likewise a tax objection case in a county court and the case of Thatcher v. People, 98 Ill. 632, was cited with approval and as authority for the position taken. The doctrine of estoppel therefore being applicable in the present case, we find much reason for applying it here. In the present case the public has upon the strength of the validity of these elections levied taxes, acquired grounds, constructed buildings, made improvements, and placed themselves in a situation where they would be seriously injured were it to be now held, after such an unreasonable delay, that all of the taxes authorized by these elections were invalidated.
In Schnell v. City of Rock Island, 232 Ill. 89, where bonds issued by the city were void and their validity questioned long after they were issued, we held that taxpayers who had stood by without protest for more than 30 years after the original bond issue without attempting to enforce their rights are barred bylaches from enjoining payment by the city.
We take judicial notice of the fact that a large percentage of the taxes in St. Clair County is paid by railroads and other corporations, and it would disrupt the school system if, after the great period of delay disclosed in this case, and by such secondary evidence as was produced, it could be held that the basis of a tax and the acts of the officials levying it were invalidated. If the ballots actually used in the elections questioned were not in proper form, appellant is presumed to have known it all these years. For some reason know only to it, the sufficiency of the ballots has never before been questioned. It may be appellant feared during all these years that if these elections were held to be invalid others would have taken place in which a greater rate might have been authorized.
A number of authorities have been called to our attention holding that a judgment sustaining or overruling an *Page 518 
objection to a tax of a prior year is not an adjudication of the same question arising in a subsequent year, but most of these cases involved the administration and collection of taxes authorized by laws which were invalid but had not previously been questioned. We think the situation here is quite different. Here, for instance, it is not claimed the law under which the tax was levied and collected was invalid. The objection raises a question of fact aside from the law by contending a certain form of ballot was not used. This is quite a different matter from assailing the validity of a law. If a public body, such as a State or county, may be estopped when their action would create grave injustice, it would seem, with equal propriety, the doctrine should apply here, especially when the validity of no statute is involved.
There are other points argued which will not be necessary to discuss or pass upon. From a careful consideration of the entire record we are of the opinion that the county court correctly overruled the objection of appellant to the special tax levied for educational purposes and the judgment of the county court is affirmed.
Judgment affirmed.
Mr. CHIEF JUSTICE MURPHY, dissenting.